USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/13/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

JUAN MARQUEZ,                        :

                                        16 Civ. 2304 (HBP)
                    Plaintiff,       :

                                        OPINION
          -against-                  :    AND ORDER

ROBERTO'S RESTAURANT CORP., et al.,:

                    Defendants.      :

-----------------------------------X

          PITMAN, United States Magistrate:

          Plaintiff commenced this action pursuant to the Fair

Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201 et seq., and

the New York Labor Law (the "NYLL") to recover unpaid minimum

wages, overtime pay and spread-of-hours pay.  Plaintiff also

asserted a claim under the NYLL against defendants for misappro-

priating tips.  Plaintiff brought the action as a collective

action pursuant to 29 U.S.C. § 216(b) with respect to the FLSA

claims, but the parties reached a settlement prior to the matter

being conditionally certified.  I presided over a settlement

conference held among the parties on September 14, 2017, during

which the parties came to an agreement concerning the essential

terms of a settlement.  The matter is currently before me on the

parties' joint application to approve a proposed settlement

agreement that they have reached (Docket Item ("D.I.") 34).  The

parties have consented to my exercising plenary jurisdiction
pursuant to 28 U.S.C. § 636(c).

Plaintiff worked at defendants' restaurant beginning on
an unspecified date in 2001 through approximately March 8, 2016.
Plaintiff was initially a dishwasher, but was promoted to busboy
and, in 2009, to waiter.  He held this position until his employ-
ment with defendants ended in March 2016.  Plaintiff alleges that
he worked approximately 60 hours per week between March 2010 and
December 2013, and that he worked approximately 50 hours per week
beginning in January 2014 through the remainder of his employ-
ment.  Plaintiff claims that from March 2010 through March 2016
defendants never paid him wages or a salary.  Rather, plaintiff
alleges his only compensation was the tips he received from
customers.  Plaintiff also claims that he was required to surren-
der $150.00 of his weekly tips to defendants, based on the
defendants' representation that they needed to withhold this sum
for taxes.  In addition, plaintiff alleges that, on a weekly
basis, defendants presented him with, and he signed, checks for
approximately $500.00, which defendants would deposit into their
own bank account.  Although defendants contend that these checks
represented plaintiff's wages and that they actually  paid
plaintiff $500.00 per week in cash because plaintiff did not have
a bank account, plaintiff claims that he never received these

2

funds and that the proceeds from these checks went to defendants'
personal use.  Plaintiff claims that he is entitled to
$160,000.00 in unpaid wages, exclusive of liquidated damages,
interest and misappropriated tips.

Defendants deny plaintiff's claims.  Defendants dispute
the number of hours plaintiff alleges that he worked; defendants
contend that plaintiff worked only approximately 40 hours per
week and is not, therefore, entitled to overtime pay.  Defendants
claim that their employees are prepared to provide testimony that
will support their contention regarding the number of hours
plaintiff worked.  Defendants also argue that plaintiff was
properly paid at the appropriate tip credit minimum wage, in
cash, at an hourly rate of $5.00 per hour.  Defendants admit that
they did not keep records of the wages paid to plaintiff.

The parties agreed to a settlement amount of
$117,500.00 (Letter of Justin Cilenti, Esq., to the undersigned,
dated Oct. 10, 2017 (D.I. 34)("Cilenti Letter"), Ex. 1).  The
parties also agree that, pursuant to the plaintiffs' retainer
agreement, plaintiff's counsel will retain $39,162.75, of the
settlement agreement for attorney's fees (Cilenti Letter, Ex. 1).

Court approval of an FLSA settlement is appropriate

> "when [the settlement] [is] reached as a result of
> contested litigation to resolve bona fide disputes."
> Johnson v. Brennan, No. 10 Civ. 4712, 2011 WL 4357376,

3

                at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed
settlement reflects a reasonable compromise over con-
tested issues, the court should approve the settle-
ment." Id. (citing Lynn's Food Stores, Inc. v. United
States, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982))

Agudelo v. E & D LLC, 12 Civ. 960 (HB), 2013 WL 1401887 at *1

(S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original).

"Generally, there is a strong presumption in favor of finding a

settlement fair, [because] the Court is generally not in as good

a position as the parties to determine the reasonableness of an

FLSA settlement." Lliquichuzhca v. Cinema 60, LLC, 948 F. Supp.

2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quota-

tion marks omitted). In Wolinsky v. Scholastic Inc., 900 F.

Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman,

United States District Judge, identified five factors that are

relevant to an assessment of the fairness of an FLSA settlement:

> In determining whether [a] proposed [FLSA]
> settlement is fair and reasonable, a court should
> consider the totality of circumstances, including but
> not limited to the following factors: (1) the
> plaintiff's range of possible recovery; (2) the extent
> to which the settlement will enable the parties to
> avoid anticipated burdens and expenses in establishing
> their claims and defenses; (3) the seriousness of the
> litigation risks faced by the parties; (4) whether the
> settlement agreement is the product of arm's length
> bargaining between experienced counsel; and (5) the
> possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satis-

fies these criteria.

4

First, under the agreement, plaintiff will recover approximately 66.7% of the total amount of his allegedly unpaid wages and overtime pay, exclusive of liquidated damages, interest and misappropriated tips.  Defendants argue that plaintiff is not entitled to overtime pay because he did not work in excess of 40 hours per week, and that plaintiff was lawfully compensated at the tip credit minimum hourly rate of $5.00 per hour because he was subject to the tip credit minimum wage.  As discussed in more detail below, given the risks these issues present, plaintiff's settlement amount is reasonable.

Second, the settlement will entirely avoid the expense and aggravation of litigating this action.  One of the critical issues in dispute is whether plaintiff worked more than 40 hours per week and, thus, whether he is entitled to overtime pay. Given the lack of documentary evidence supporting either party's position, both parties will likely need to conduct depositions to further explore this issue.  The settlement obviates the neces- sity and expense of conducting these depositions.

Third, the settlement will enable plaintiff to avoid the risks of litigation.  Plaintiff will have to establish that defendants failed to compensate him and that he is entitled to the overtime pay.  Given the lack of documentary evidence and the fact that plaintiff bears the burden of proof, it is uncertain

5

whether, or how much, plaintiff would recover at trial. See Bodon v. Domino's Pizza, LLC, NO. 09-CV-2941 (SLT) 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom. by, Bodon v. Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, because I presided over the settlement conference, I know that the settlement is the product of arm's-length bargaining between experienced counsel. Both counsel represented their clients zealously at the settlement conferences.

Fifth, there are no factors here that suggest the existence of fraud. The essential terms of the settlement were reached during a settlement conference before the Court. This fact further negates the possibility of fraud or collusion.

6

The proposed agreement also contains a release in favor
of defendants limited to claims plaintiff might have relating to
wage and hour issues.  The provision states, in pertinent part,
that plaintiff

> voluntarily releases and forever discharges defendants
> and their predecessors, successors, heirs, . . . from
> any and all actions, causes of action, . . ., whether
> known or unknown, which Plaintiff ever had or no[w] has
> as against the Defendants from the beginning of time
> until the date of execution of this Agreement related
> with:  (i) All claims brought in the Lawsuit; (ii) All
> claims for overtime, minimum wage, unpaid tips and any
> other claims for wages pursuant to the [FLSA] and/or
> [the NYLL]; (iii) All claims related to retaliation
> contrary to the anti-retaliation provisions of the
> [FLSA] and/or the [NYLL]; (iv) All claims related to
> record keeping, liquidated damages interest and/or
> attorneys fees, or other claims pursuant to the [FLSA]
> and/or [the NYLL]; and (v) All correlative common law
> claims associated with nonpayment or underpayment of
> wages . . .

(Cilenti Letter, Ex. 1 ¶ E).  Although the release is unlimited
in duration and contains both known and unknown claims, it is
permissible because it is limited to claims relating to wage and
hour issues.  See e.g., Yunda v. SAFI-G, Inc., 15 Civ. 8861
(HBP), 2017 WL 1608898 at *3 (S.D.N.Y. April 28, 2017) (Pitman,
M.J.); Santos v. Yellowstone Props., Inc., 15 Civ. 3986 (PAE),
2016 WL 2757427 at *1, *3 (S.D.N.Y. May 10, 2016) (Engelmayer,
D.J.) (approving release that included both known and unknown
claims and was limited to wage and hour claims); Hyun v. Ippudo
USA Holdings, 14 Civ. 8706 (AJN), 2016 WL 1222347 at *3-*4

7

(S.D.N.Y. Mar. 24, 2016) (Nathan, D.J.) (approving release that included both known and unknown claims through the date of the settlement that was limited to wage and hour issues; rejecting other release that included both known and unknown claims and claims through the date of the settlement that were not similarly limited); cf. Alvarez v. Michael Anthony George Constr. Corp., No. 11 CV 1012 (DRH)(AKT), 2015 WL 10353124 at *1 (E.D.N.Y. Aug. 27 2015) (rejecting release of all claims "whether known or unknown, arising up to and as of the date of the execution of this Agreement" because it included "the release of claims unrelated to wage and hour issues" (internal quotation marks omitted)).

Finally, the settlement agreement provides that $39,162.75 of the settlement fund will be paid to plaintiff's counsel. This constitutes slightly less than one-third of the total settlement amount. Contingency fees of one-third in FLSA cases are routinely approved in this Circuit. Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31,

8

2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13

Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014)

(Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., No.

13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013)

(approving attorneys' fees of one-third of FLSA settlement

amount, plus costs, pursuant to plaintiff's retainer agreement,

and noting that such a fee arrangement "is routinely approved by

courts in this Circuit"); Febus v. Guardian First Funding Grp.,

LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A]

fee that is one-third of the fund is typical" in FLSA cases);

accord Calle v. Elite Specialty Coatings Plus, Inc., No. 13-CV-

6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014);

Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL

2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freeman, M.J.).

      Accordingly, for all the foregoing reasons, I approve

the settlement in this matter.  In light of the settlement, the

action is dismissed with prejudice and without costs.  The Clerk

is respectfully requested to mark this matter closed.

Dated:    New York, New York
         November 13, 2017

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

9

Copies transmitted to:

All Counsel

10